UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMARIS I. WARD,

                    Plaintiff,

      v.

UNITED STATES OF AMERICA et al.,

                 Defendants.

CASE NO. 3:24-cv-05836-DGE

ORDER GRANTING MOTION TO
EXCLUDE EXPERT TESTIMONY
OF DR. RICHARD CUMMINS
(DKT. NO. 22) AND MOTION FOR
SUMMARY JUDGMENT (DKT.
NO. 23)

Before the Court is Defendants' motion to exclude the expert testimony of Dr. Richard Cummins, pursuant to Federal Rule of Evidence 702, and motion for summary judgment. (Dkt. Nos. 22, 23.) For the reasons that follow, Defendants' motions are GRANTED.

## I      FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff, who was seventeen years old during the events of this case, sought medical treatment at Madigan Army Medical Center ("MAMC") over several weeks in October 2022. (Dkt. No. 1 at 3–4.) Plaintiff alleges emergency care providers at MAMC failed to properly

evaluate and diagnose her with acute bacterial rhinosinusitis on October 16, 2022, which led to their failure to determine the extent of the sinusitis so it could be treated in a timely fashion. (*Id.* at 4.) As a result, Plaintiff alleges the bacterial infection progressed untreated for more than 30 hours, which caused permanent damage to the optic nerve in her left eye, resulting in permanent blindness in the left eye. (*Id.*) Plaintiff alleges these actions amounted to a breach of the standard of care of reasonably prudent emergency care providers when confronted with symptoms such as Plaintiff's. (*Id.*) Plaintiff brings causes of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 and 1346(b)(1), for medical negligence and vicarious liability. (*Id.* at 1, 5–7.)

The timeline of the events leading to the injury to Plaintiff's left eye is as follows: On October 9, 2022, Plaintiff visited the emergency department at St. Clare Hospital with "sore throat/flu like symptoms[,]" including two weeks of fevers without relief, nasal stuffiness, and ear discomfort and pressure. (Dkt. No. 24-1 at 2, 5; 26-1 at 1.) Plaintiff had warm skin temperature, but did not have a fever. (*See* Dkt. No. 26-1 at 1) (reporting a temperature of 36.6°C). The physician prescribed Plaintiff with a Z-Pak (the common name for the antibiotic azithromycin) and recommended a follow-up with Plaintiff's primary care provider. (*Id.* at 5.) On October 13, Plaintiff went to MAMC and reported fever, chills, body aches, sore throat, nasal congestion, fatigue, nausea, and ear pressure that had not resolved after taking four of the five days of her Z-Pak. (Dkt. No. 26-2 at 1–2.) Plaintiff's treating physician noted, "Differential diagnosis considered, but not limited to covid, strep, influenza, mono, other viral [upper respiratory infections], bacterial sinusitis, . . ." but "[g]iven that she has been on 4 days of azithromycin with no improvement, have a lower suspicion for sinusitis." (*Id.* at 3.) Plaintiff was given a "single dose of Decadron[,]" which is a steroid administered to help Plaintiff's sore

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 2

throat. (*Id.*) The physician recommended continuing acetaminophen, ibuprofen, and cold medicine, and advised it was "okay to finish the Z-Pak," though the physician noted they had a "low suspicion that this is a bacterial infection." (*Id.*)

On October 16, Plaintiff returned to the MAMC emergency room because her symptoms had continued despite finishing her antibiotics and using other over-the-counter treatment. (Dkt. No. 26-3 at 1.) Plaintiff reported a fever of 101.7 degrees fahrenheit the previous night. (*Id.*) The Decadron apparently "marginally improved her sinus congestion[.]" (*Id.*) Plaintiff reported a headache "throughout her entire head that is worsened with positional changes including sitting upright," but apparently did not report changes to her vision aside from "mild photophobia." (*Id.*) The treating physician noted that because Plaintiff's sinus symptoms were not "significantly worsening, bacterial sinusitis is still considered but less likely[.]" (*Id.* at 2.) The physician wrote there was no need to start a second course of antibiotics or give a second dose of Decadron at that time. (*Id.*) They deferred imaging "given the improvement of her symptoms after IV fluids." (*Id.*) The physician concluded, "[g]iven the improvement in her symptoms and the fact that she has close follow-up with her pediatrician tomorrow (10/17), I feel comfortable discharging the patient home at this time." (*Id.*) These observations and recommendations were affirmed by the emergency department senior resident and the attending provider. (*Id.* at 3.)

Plaintiff reported to her pediatric appointment on October 17. (Dkt No. 26-4 at 1–2.) Her symptoms were still present, and Plaintiff additionally reported "a small amount of swelling around her eyes." (*Id.* at 2.) The physician ordered imaging and labs and admitted Plaintiff to the pediatric inpatient unit for "further management." (*Id.*) Her head CT scan showed "paranasal sinus disease," which "confirmed presence of sinusitis, which presumably did not respond to initial antibiotic therapy 3+ weeks prior to presentation today (17OCT)." (*Id.* at 3;

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 3

Dkt. No. 26-5 at 2.)  The physician started Plaintiff on the antibiotics ceftriaxone and vancomycin, and later added metronidazole to her antibiotic regimen.  (Dkt. Nos. 26-4 at 4; 26-6 at 1.)

During the "late morning-early afternoon" of October 18, Plaintiff began to describe "blurry vision in her left eye."  (Dkt. No. 26-6 at 1.)  She took a nap, and upon waking up, "lost all perception of vision in that eye."  (*Id.* at 2.)  Pediatrics requested an antibiotic consult in the afternoon of October 18, and the attending physician noted that "Azithromycin is suboptimal treatment for sinusitis and associated with high rates of treatment failure."  (Dkt. No. 24-2 at 3.)

On October 19, an otolaryngologist performed sinus surgery on Plaintiff, which confirmed her "acutely infected left sided paranasal sinuses[]" but findings suggested that an "orbital compartment syndrome was not the underlying cause of her left sided vision loss."  (Dkt. Nos. 26-8 at 1–2; 26-9 at 2.)  Plaintiff was discharged on October 25.  (Dkt. No. 26-9 at 3.)  Subsequent evaluations confirmed the loss of Plaintiff's vision was not genetic (Dkt. No. 26-10 at 1) and was likely a "complication of [sinusitis] and orbital cellulitis."  (Dkt. No. 26-12 at 1.)

Plaintiff has put forth Dr. Richard Cummins to testify on the standard of care she received at MAMC and the cause of her injury.[1]  (Dkt. Nos. 18 at 2–3; 18-1 at 2.)  Dr. Cummins is a "Board-certified emergency medicine and Internal Medicine physician."  (Dkt. No. 18 at 2.)  Dr. Cummins opined that MAMC emergency room physicians failed to diagnose and treat Plaintiff in a timely manner; according to him, on October 16, 2022, Plaintiff "should have been diagnosed with [acute bacterial rhinosinusitis ("ABRS")], started on intravenous antibiotics[,]

---

[1] In their *Daubert* motion, Defendants state they "do not challenge the standard of care opinions proffered by Dr. Cummins."  (Dkt. No. 22 at 5 n.1.)  This Order will therefore focus only on Dr. Cummins's testimony related to causation.

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 4

and evaluated further with radiologic imaging studies to rule-out serious complications." (Dkt. No. 18-1 at 6.)

Dr. Cummins opined that, based on his interpretation of Plaintiff's medical records, Dr. Timothy R. Gall, MD, chief of Child Neurology at MAMC "presented a consensus conclusion that [Plaintiff's] left eye blindness was due to damage to her optic nerve (optic neuropathy) from her infectious sphenoid sinusitis," and the bacterium was later identified as fusobacterium necrophorium. (*Id.*) According to Dr. Cummins, "[t]his infection is treated with a 3rd generation penicillin (amoxicillin with clavulanate, aka Augmentin), or multigenerational quinolones (levofloxacin, moxifloxacin.). (*Id.*)

Dr. Cummins further stated that had MAMC physicians diagnosed Plaintiff with ABRS on October 16, 2022, "they would have started her on typically recommended antibiotics for ABRS," which happen to be "the same antibiotics that are effective against fusobacterium necrophorium (Augmentin, levofloxacin, moxifloxacin)." (*Id.*)

Dr. Cummins opined that the 30-hour delay in "effective therapy" allowed Plaintiff's ABRS to progress to the point of optic nerve damage with resulting left eye blindness." (*Id.* at 7.) Dr. Cummins concluded, "if the MAMC physicians had started appropriate treatment much earlier—on 10/16/22—they would have prevented the loss of vision in her left eye, and [Plaintiff] would not have ended up with permanent left eye blindness." (*Id.*)

**B. Procedural History**

On February 27, 2026, Defendants filed their motion to exclude Dr. Cummins's expert testimony (Dkt. No. 22) and motion for summary judgment (Dkt. No. 23). They argue Dr. Cummins's opinion that levofloxacin or moxifloxacin would have been effective in treating Plaintiff's infection is not supported by scientific or medical methodology, nor is it based on his

clinical opinion or experience.  (Dkt. No. 22 at 6–7.)  Defendants argue his opinion is based entirely on literature, and review of that literature neither addresses his opinion nor supports his conclusion.  (*Id.* at 8.)  Further, Defendants argue Dr. Cummins has put forth a new opinion that Plaintiff's infection was "polymicrobial"; this opinion was raised for the first time in his deposition and according to Defendants, lacks foundation because Dr. Cummins admitted he could not identify anything in the record that confirmed any other type of bacteria were present. (*Id.* at 9–11.)

In response, Plaintiff asserts that Defendants have misconstrued Dr. Cummins's causation opinion, because his opinion does not relate to *which* antibiotic would have been effective, but rather whether failure to administer *any* antibiotic at all was consistent with a standard of care. (Dkt. No. 25 at 8, 12.)  Plaintiff argues Dr. Cummins's causation opinion identifies four failures of MAMC physicians that were part of a causal chain that led to the loss of vision in Plaintiff's eye.  (*Id.* at 12–13.)  Notwithstanding that Dr. Cummins' specifically identified augmentin, levofloxacin, and moxifloacin as effective in treating fusobacterium necrophorium bacterium, and as being the typically recommended antibiotics to treat ABRS, Plaintiff asserts that Dr. Cummins "will offer no opinion regarding the effectiveness" of levofloxacin or moxifloxacin. (*Id.* at 14.)  Finally, Plaintiff pushes back on Defendants' position that Dr. Cummins had a new theory of a polymicrobial infection.  (*Id.* at 15.)  In reply, Defendants reiterate that there can be no but-for causation without an opinion on which antibiotics would have prevented vision loss and further, if Dr. Cummins's opinion is more general than originally suggested, it should be excluded because the Court cannot perform its "gatekeeping role."  (Dkt. No. 30 at 2–5.)

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 6

## II    LEGAL STANDARD

### A. Motion to Exclude

Under Federal Rule of Evidence 702, a trial court may exercise discretion to allow expert testimony if the proponent "demonstrates to the court that it is more likely than not that" such testimony (1) "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "is based on sufficient facts or data;" (3) "is the product of reliable principles and methods;" and (4) "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The Court's role at this stage is that of "gatekeeper," and at the gatekeeping stage the relevant inquiry is limited to whether the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

Generally, "[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry" and "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (internal citation omitted). To evaluate reliability, the district court "must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (Apr. 27, 2010). *Kumho Tire Co. v. Carmichael* emphasizes that the "test of reliability is 'flexible' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." 526 U.S. 137,

141 (1999).  The "list of factors was meant to be helpful, not definitive," *id.* at 151, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, *id.* at 152, based on "the particular circumstances of the particular case," *id.* at 150.

"Although a district court may screen an expert opinion for reliability, and may reject testimony that is wholly speculative, it may not weigh the expert's conclusions or assume a factfinding role." *Elosu v. Middlefork Ranch, Inc.*, 26 F.4th 1017, 1020 (9th Cir. 2022).  The Court "is not tasked with deciding whether the expert is right or wrong, just whether [the] testimony has substance such that it would be helpful to a jury." *Alaska Rent-A*-Car, 738 F.3d at 969–970.

The Ninth Circuit has explained that expert medical testimony should be admitted "if physicians would accept it as useful and reliable." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).  Medical testimony may be based mainly on the expert's experience and need not be conclusive.  *Primiano*, 598 F.3d at 565–566.  Where medical experts who "stand at or near the top of their field and have extensive clinical experience with the . . . class of disease at issue, are prepared to give expert opinions supporting causation . . . *Daubert* poses no bar based on their principles and methodology." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017).  But, "nothing in *Wendell* absolves expert witnesses of the general and longstanding requirement that they explain their methods with enough detail[.]" *In re Incretin-Based Therapies Prods. Liab. Litig*., No. 21-55342, 2022 WL 898595, at *1 (9th Cir. Mar. 28, 2022).  Indeed, "there is no presumption in favor of admission," *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025), and experts relying on their experience as a basis for their opinion must still explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the

facts," *Avery v. City of Seattle*, No. 2:22-CV-00560-LK, 2024 WL 2959541, at *7 (W.D. Wash. June 12, 2024) (quoting Fed. R. Evid. 702, Advisory Committee's Notes to 2000 amendment). And although *Daubert* "may be harder to apply when the expert testimony is 'experience-based' rather than 'science-based,'" any such difficulty "cannot simply lead to a 'that goes to weight, not admissibility' default"; rather, there is "a strong argument that reliability becomes more, not less, important when the 'experience-based' expert opinion is perhaps not subject to routine testing, error rate, or peer review type analysis, like science-based expert testimony." *United States v. Valencia-Lopez*, 971 F.3d 891, 898 (9th Cir. 2020); *see also* Fed. R. Evid. 702, Advisory Committee's Notes to 2023 amendment (decisions holding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility . . . are an incorrect application of Rules 702 and 104(a)").

### B. Motion for Summary Judgment

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.");*see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 9

material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### III    DISCUSSION

#### A. *Daubert* Motion to Exclude

##### 1.    Dr. Cummins's opinion is relevant

Defendants do not dispute that Dr. Cummins's opinion is relevant. (*See generally* Dkt. No. 22 at 6.)  The Court finds that his opinion easily clears the *Daubert* relevance bar.  As discussed below in the Court's order on Defendants' motion for summary judgment, Washington law requires that causation in medical negligence cases be proved by expert testimony.  Thus, Dr. Cummins's causation opinion certainly "advances a material aspect" of Plaintiff's case. *Daubert*, 43 F.3d at 1315.

##### 2.    Dr. Cummins is qualified as an expert.

As Plaintiff points out, Defendants do not directly challenge Dr. Cummins's qualifications to present his opinions. (*See generally* Dkt. No. 22; Dkt. No. 25 at 10.)  In their reply, Defendants acknowledge as much (Dkt. No. 30 at 6 n.3) but also argue that Dr. Cummins does not have the clinical experience or educational basis to anchor his causation opinion about the cause of Plaintiff's infection.  (*Id.* at 6–7.)  The Court agrees with Defendants that Dr. Cummins's qualifications in an unrelated case are not material to the analysis in this matter.  (*See id.* at 6.)  However, the Court notes that Dr. Cummins is qualified to testify because he has been medical physician for several decades and is board-certified in both internal and emergency medicine. (Dkt. No. 26-17 at 2, 7–8.)  Although he is not an infectious disease specialist, he is a

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 10

board-certified emergency medicine physician with over 39 years of experience.  (*Id.* at 7.)
There is "no requirement that an expert be a specialist in a given field," and "any lack of
particularized expertise goes to the weight accorded [an expert's] testimony, not to the
admissibility of her opinion as an expert[.]"  *Marshall v. RS 2018 Float, LLC*, No. 22-35899,
2024 WL 637487, at *1 (9th Cir. Feb. 15, 2024).  Additionally, in preparing his opinion Dr.
Cummins reviewed Plaintiff's medical records from MAMC from August 1, 2022, through
January 4, 2024, as well as her records from her visit to St. Clare Lakewood on October 9, 2022.
(Dkt. No. 26-16 at 2.)

To the extent there is a challenge to Dr. Cummins's qualifications, the Court is satisfied
he has demonstrated at least a "*minimal foundation* of knowledge, skill, and expertise required"
to give expert testimony on the issues in this case.  *Hangarter v. Provident Life & Acc. Ins. Co.*,
373 F.3d 998, 1016 (9th Cir. 2004).

### 3.   Dr. Cummins's methodology is not reliable.

As an initial matter, the Parties disagree on what Dr. Cummins' opinion *is*.  Defendants
argue Dr. Cummins opines that the failure to start Plaintiff on either levofloxacin or
moxifloxacin on October 16, 2026 caused her permanent loss of vision—and argue this opinion
is unreliable.  (Dkt. No. 22 at 2.)  Plaintiff contends Dr. Cummins is not offering opinions about
*which* specific antibiotic should have been initiated on October 16,[2] but whether a standard of
medical care was met while Plaintiff was treated in the MAMC emergency department on
October 16, when no "appropriate" antibiotic was administered.  (Dkt. No. 25 at 8.)  Said another

---

[2] Because Plaintiff explicitly acknowledges Dr. Cummins will offer no opinion as to the
effectiveness of levofloxacin or moxifloxacin in preventing Plaintiff's vision loss (*see* Dkt. No.
25 at 14), the Court disregards Defendants' argument that that opinion would be unreliable.
Based on Plaintiff's representations, the Court holds that Dr. Cummins shall not testify about the
effectiveness of these drugs.

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT.
NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 11

way, Plaintiff characterizes Dr. Cummins's opinion as concluding that a "causal chain of related failures to comply with the standard of care in an emergency room led to Plaintiff's permanent loss of vision in her left eye." (*Id.* at 9.)  These failures began with (1) the MAMC's physicians failing to diagnosis Plaintiff with bacterial sphenoid sinusitis which (2) led to failing to evaluate for complications of sinusitis, which (3) led to failing to initiate appropriate intravenous antibiotics, which (4) led to failing to admit Plaintiff for treatment and subspeciality evaluations. (*Id.*)

The Court turns to Dr. Cummins's expert report for clarity.  In a section titled "The Causal Chain Leading to [Plaintiff's] permanent left eye blindness[,]" Dr. Cummins opined,

> Because the physicians who saw [Plaintiff] in the MAMC-ED on 10/16/2022 failed to diagnose her severe bacterial pan-sinusitis, including sphenoid sinusitis, there was a more than 30-hour delay in getting her started of effective therapy. This allowed her ABRS to progress to the point of optic nerve damage with resulting left eye blindness.  In my opinion, if the MAMC physicians had started appropriate treatment much earlier—on 10/16/2022—they would have prevented the loss of vision in her left eye, and [Plaintiff] would not have ended up with permanent left eye blindness.

(Dkt. No. 26-16 at 5–6.)  Thus, according to Dr. Cummins, a "causal chain" of failures to comply with the standards of reasonable emergency department care led to Plaintiff's vision loss.  (Dkt. Nos. 25 at 9; 26-16 at 6.)  Within the "causal chain" was the failure to timely initiate "appropriate treatment," otherwise identified as "appropriate intravenous antibiotics."  (Dkt. No. 26-16 at 7.)

Plaintiff contends Dr. Cummins's opinion is based on his training and experience as an emergency medicine physician.  (Dkt. No. 25 at 11; *see also* Dkt. No. 26-16 at 6 (opinions are based on "my medical education, training, and clinical experience, as well as my clinical judgment, scientific expertise, and continued efforts at learning").  As described above, a medical expert may rely heavily on their experience, *Wendell*, 858 F.3d at 1237, but they must

still explain their methods, *In re Incretin-Based Therapies*, 2022 WL 898595, at \*1.  Put differently, the opinion must describe a "methodology [that] can be challenged in some objective sense" because "a subjective, conclusory approach . . . cannot reasonably be assessed for reliability[.]"  *United States v. Williams*, No. 3:13-CR-00764-WHO-1, 2017 WL 3498694, at \*10 (N.D. Cal. Aug. 15, 2017) (quoting *City of Pomona*, 750 F.3d at 1046).

Dr. Cummins determined from review of available records that Plaintiff's left eye blindness was caused by "damage to her optic nerve (optic neuropathy) from her infectious sphenoid sinusitis," which contained fusobacterium necrophorium.  (Dkt. No. 26-16 at 5.)  But nowhere in Dr. Cummins's expert report or deposition testimony does he explain *why or how* the failure to diagnose Plaintiff with severe bacterial pan-sinusitis on October 16 caused damage to her optic nerve.  There is no information as to how or when the sphenoid sinusitis began damaging the optic nerve relative to the October 16 visit as compared, for example, to the October 9 or October 13 visits; making his opinion—that starting antibiotics more than 30 hours after the October 16 visit caused optic nerve damage—conclusory and unreliable.

Further raising doubts as to the reliability of Dr. Cummins's causation opinion is his assessment that the "effective therapy" that should have been administered on October 16 was "appropriate intravenous antibiotics."  (Dkt. No. 26-16 at 6.)  He provides no information as to when damage to the optic nerve began and why the use of "appropriate" antibiotics on that date would have prevented (or possibly reversed) optic nerve damage.  Nor does he identify which antibiotics would have been effective on October 16[3]; in fact, Plaintiff states Dr. Cummins will

---

[3] To the extent Dr. Cummins's opinion is that *any* antibiotic would have prevented Plaintiff's vision loss, that opinion fails based on the factual record.  Plaintiff received azithromycin at St. Clare's Hospital, and ceftriaxone, vancomycin, and metronidazole at MAMC; none of which appear to have effectively treated fusobacterium necrophorium.

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 13

not offer opinions about the effectiveness of the specific antibiotics identified in his report (*see* Dkt. No. 25 at 14).

Simply put, the Court cannot identify the generally accepted methodology Dr. Cummins used in arriving at his medical conclusions on causation.  When asked how he reached the opinion that if physicians had given Plaintiff antibiotics on October 16, the antibiotics would have been effective to prevent Plaintiff's vision loss, Dr. Cummins stated, "A general experience that antibiotics often work." (Dkt. No. 24-15 at 21–22.)  To the extent Dr. Cummins's opinions are based on his general experience, he does not explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 Advisory Committee's notes to 2000 amendment.

Dr. Cummins's opinion is excluded.[4]

**B.  Motion for Summary Judgment**

Concurrent with its *Daubert* motion, Defendants moved for summary judgment.  (Dkt. No. 23.)  To succeed on her negligence claim at trial, Plaintiff must establish four elements: (1) duty, (2) breach, (3) causation and (4) damages.  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. P. Bell,* 275 Cal. Reptr. 878 (Cal. App. 1990)).  Defendants' motion for summary judgment focused only on causation.  (Dkt. No. 23 at 3–5.)

To defeat summary judgment on her medical negligence claim, Plaintiff must establish a genuine issue of material fact on two key elements: "(1) that the defendant health care provider

---

[4] Defendants also argue Dr. Cummins raised a new opinion in his deposition when he opined that Plaintiff had a polymicrobial infection.  (Dkt. No. 22 at 9.)  However, as Plaintiff points out, Dr. Cummins testified later in his deposition that there were no other bacteria identified in Plaintiff's case. (Dkt. No. 26-18 at 3.)  Accordingly, the Court finds no basis to conclude Dr. Cummins raised a new opinion in his deposition.

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 14

failed to exercise the standard of care of a reasonably prudent health care provider in that same profession and (2) that such failure was a proximate cause of the plaintiff's injuries." *Frausto v. Yakima HMA, LLC*, 393 P.3d 776, 779 (Wash. 2017) (citing Wash. Rev. Code. § 7.70.040). Defendants argues that if the Court excludes Dr. Cummins's expert causation testimony, then no genuine issue of material fact remains for trial on the second element: proximate causation. (Dkt. No. 23 at 3–5.)

Under Washington law, "[i]f a plaintiff lacks competent expert testimony to create a genuine issue of material fact with regard to one of the elements of the [medical negligence] claim and is unable to rely on an exception to the expert witness testimony requirement, a defendant is entitled to summary judgment." *Reyes v. Yakima Health Dist.*, 419 P.3d 819, 823 (Wash. 2018) (en banc). Having determined that Plaintiff's causation expert's opinion is not reliable, Plaintiff fails to raise a genuine issue of material fact as to causation. The Court is unaware of an exception to the expert witness testimony requirement for a medical malpractice claim under Washington law. Accordingly, Defendants' motion for summary judgment (Dkt. No. 23) is GRANTED.[5]

---

[5] Defendants make additional arguments regarding Plaintiff's claim for past medical expenses, Plaintiff's corporate negligence claim, and whether MAMC is a proper defendant. (*See* Dkt. No. 23 at 5–7.) Because the Court grants Defendants' motion for summary judgment, the Court need not reach these arguments.

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 15

## IV    CONCLUSION

For the reasons described above, Defendants' motion to exclude Dr. Cummins's testimony (Dkt. No. 22) and motion for summary judgment (Dkt. No. 23) are GRANTED.  The trial calendar is stricken, and the Clerk shall close the case and enter judgment.

Dated this 12th day of June, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. RICHARD CUMMINS (DKT. NO. 22) AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 23) - 16